UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Division 1181 Amalgamated Transit Union's
New York Employees Pension Fund and
Division 1181 Amalgamated Transit Union's
Welfare Fund and their Trustees Tommy
Mullins, Stanley Brettschneider, Neil          08-CV-2910(CPS)(MDG)
Strahl, Domenic Gatto, and Andrew
Brettschneider,

                                               MEMORANDUM
                    Plaintiffs,                AND ORDER

      - against -


Minibus Service, Inc. and Gotham
Transportation, Inc.,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

       Plaintiffs the New York Employees Pension Fund and the New

York Welfare Fund of Division 1181 Amalgamated Transit Union (the

"Funds") and their Trustees: Tommy Mullins, Stanley

Brettschneider, Neil Strahl, Domenic Gatto, and Andrew

Brettschneider commenced this action against defendants Minibus

Service, Inc. ("Minibus") and Gotham Transportation, Inc.

("Gotham"). Plaintiffs allege that defendants violated Section

515 of ERISA, 29 U.S.C. § 1145 by failing to contribute to the

Funds. The Funds seek an injunction pursuant to ERISA § 502(a),

29 U.S.C. § 1132(a), requiring defendants to make timely

contributions, pay all amounts owed to the Funds as determined by

the 2002-2004 and 2004-2007 audits, pay contributions owed to the

Funds for the months of May and June of 2008, and pay interest on all contributions owed or liquidated damages of twenty percent of the delinquent contributions in the event that figure exceeds interest owed, together with any additional amounts that may become due to the Funds during the pendency of this action, and reasonable attorneys' fees and costs and disbursements. Now before the Court is defendants' motion to dismiss the complaint and compel arbitration.[1] For the reasons set forth below, the motion is denied.

## Background

The following facts are taken from the complaint and the parties' submissions in connection with this motion. Disputes are noted.

*The Parties*

Plaintiffs are multi-employer employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37). The Funds are separate and distinct entities from Local 1181 and from the Trustees of the Funds. The Trustees are fiduciaries of the Funds within the meaning of Secion 3(21) of ERISA, 29 U.S.C. §§ 1002(21). The Funds are administered at 101-49 Woodhaven Boulevard, Ozone Park, New York

---

[1]Defendants move alternatively for summary judgment pursuant to Rule 56(c). However, the correct motion to compel arbitration is a motion to dismiss. *See, e.g.*, *Kowalewski v. Samandarov*, 2008 U.S. Dist. LEXIS 85616 at *1 (S.D.N.Y. 2008). Defendants do not seek summary judgment on the merits of plaintiffs' claims in the underlying dispute, but only on the question of whether arbitration is required.

11416.

Defendants Minibus and Gotham are employers within the meaning of 29 U.S.C. § 152(2) of ERISA and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and are engaged in commerce in an industry affecting commerce, within the meaning of Sections 3(11) and (12) of ERISA, 20 U.S.C. §§ 1002(11) and (12). Both Minibus and Gotham employ employees represented for the purposes of collective bargaining by the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

The defendants are related entities, both incorporated under the laws of New York State, and have their principal place of business at 2847 West 21st St., Brooklyn, New York 11224. Both are contractors with the New York City Department of Education (the "Department of Education").


*Agreements*

Since 2002, the defendants have been parties to a collective bargaining agreement ("CBA") with Local 1181, Sabatelli Aff. at 3, to which the Funds are not parties. D'Ulisse Dec. ¶ 5, Ex. A, p. 1. The CBA contains a grievance and arbitration provision entitled "Grievances and Impartial Arbitrator." This provision refers only to "the Employer" and "the Union," and does not mention the Funds. D'Ulisse Dec. ¶ 6, Ex. A, Section 4, p. 6.

In the CBA, the parties to the CBA agreed to be bound by the terms of the Funds' Agreements of Trust. D'Ulisse Dec. ¶ 7, Ex. A, Section 11(h), p. 20 and Section 14(j), p. 29. There are two Agreements of Trust: the Restated Agreement and Declaration of Trust of the pension fund of the Division 1181 A.T.U. and the Restated Agreement and Declaration of Trust of the welfare fund of the Division 1181 A.T.U. (collectively, the "Trust Agreements"). D'Ulisse Decl. Ex. B, C. The CBA incorporates a Policy for Collection of Delinquent Contributions, which governs contributions pertaining to both Funds (the "Joint Policy"). D'Ulisse Decl. Ex. D. The Joint Policy is signed by all parties.

Under the terms of both Trust Agreements, the Trustees are empowered to choose the appropriate means to enforce the employers' contribution obligations. Both Trust Agreements contain the following language:[2]

> Section 3: In operating and administering the Fund, the powers and/or duties of the Board of Trustees, or its designee shall include, but not be limited to, the following:
> (f) To receive and collect all Contributions and other amounts due to and payable to the Fund. In doing so, the Board of Trustees, in its sole discretion, shall have the right to maintain any and all actions and legal proceedings necessary for the collection of the Contributions or payments provided for and required and the right to prosecute, defend, compromise, settle, abandon, or adjust, by arbitration or otherwise, any such actions, suits, proceedings, disputes, claims, details,

---

[2]Defendants in their motion refer to an earlier Trust Agreement's language. However, the substance of the agreements with regards to the power of the Trustees to choose arbitration is the same.

and things.

Trust Agreement, Article V, Section 3(f).[3] The Trust Agreements also provide that "[t]he Board of Trustees may compel and enforce the payment of the Contributions due in any manner which it may deem proper." *Id.* at Article VII, Section 3.

*Audit Procedure*

The Joint Policy establishes, among other things, procedures for conducting payroll audits. The Joint Policy states that prior to conducting each payroll audit, the auditor shall review the CBA and any pending disputes. Joint Policy, Section 4(5). The following section describes the procedure in the event of a dispute:

> If during a payroll audit, the auditor encounters an issue of interpretation of the CBA or an Employer takes a position inconsistent with the auditor's understanding of such CBA, the auditor shall seek the opinion of the Union. If the Union agrees with the Employer's interpretation or position, that shall resolve the matter, unless such interpretation or position is, in the view of the auditor, clearly inconsistent with the language of the governing documents. In such an event, or if the Union or the Employer disagree, the auditor shall present the issue in writing to the Board(s) of Trustees for a decision before completing the payroll audit.

*Audits of Defendants*

In August of 2007, the Funds' auditors conducted an audit of

---

[3]Because Both Trust Agreements contain identical provisions, but have differing pagination, I refer only to the articles and sections.

Minibus's payroll records for the period of September 1, 2002 to June 30, 2004 to determine whether the appropriate contributions had been paid by Minibus to the Funds (the "2002-2004 Audit"). *Id*. at ¶ 14. The audit found that the appropriate contributions had not been made. *Id*. Minbus received the draft report of the 2002-2004 Audit from the auditor on June 20, 2007. *Id*. at ¶ 16. Four weeks later, after no response from Minibus, the auditor issued the final report to the Funds' Board of Trustees. *Id*. at ¶ 17. On August 30, 2007, the Trustees issued to Minibus its written notice of the audit findings regarding the 2002-2004 Audit and demanded payment. *Id*. at ¶ 19. Minibus did not make any payments. *Id*. at ¶ 20. In April 2008, eight months after the Trustees issued a written notice of audit findings, Minibus contacted the Trustees and requested that it be given additional time to review the 2002-2004 Audit. *Id*. at ¶ 22. The Trustees denied Minibus's request for more time to review the Audit because of the lapse of almost ten months since the Trustees sent Minibus its payroll audit findings. *Id*. at ¶ 24.

In April 2008, the Funds' auditors conducted payroll audits of both Minibus and Gotham for the period of July 1, 2004 though December 31, 2007 to determine whether the appropriate contributions had been paid by defendants to the Funds (the "2004-2007 Audits"). *Id*. at ¶ 28. The audit found that the appropriate contributions had not been made. *Id*. Minibus received

the draft report of this audit on April 24, 2008. *Id*. at ¶ 29. Gotham received the draft report of this audit on April 21, 2008. *Id*. at ¶ 30. After both defendants did not respond to the draft reports, on May 28, 2008, the auditor issued final audit reports for the 2004-2007 Audits to the Funds' Board of Trustees. *Id*. at ¶ 31. On May 29, 2008, the Trustees issued to Minibus a written notice of the 2004-2007 Audit findings. *Id*. at ¶ 32. Also on May 29, 2008, the Trustees issued to Gotham a written notice of the findings. *Id*. at ¶ 33. During the four week period after the Trustees issued these notices, defendants gave no response. *Id*. at ¶ 34. To date, defendants have not raised any objections to the 2004-2005 Audit findings, and have not made payment of amounts claimed due. *Id*. at ¶ 36.

Defendants made arbitration demands following both audits. Compl. at ¶ 25, Sabatelli Aff. Ex. F. An arbitration notice was issued by the contract arbitrator, but the Trustees declined to arbitrate, Sabatelli Aff. Ex. G, on the ground that the Funds were not parties to the arbitration agreement and had not agreed to arbitration. Swyers Dec., Ex. C.

## Discussion

Defendants argue that the action by the Funds must be dismissed because the Funds are obligated to submit all claims to arbitration under Section 4 of the CBA, which requires that all claims unable to be settled through a grievance procedure shall

be submitted to arbitration. The Trustees contend that the Funds
are independent non-signatory entities, not bound by the terms of
the Collective Bargaining Agreement.

"Arbitration is a matter of contract and a party cannot be
required to submit to arbitration any dispute which he has not
agreed so to submit." *AT&T Technologies, Inc. v. Communications
Workers of America*, 475 U.S. 643; 106 S.Ct. 1415; 89 L. Ed. 2d
648 (1986). On a motion to compel arbitration, the moving party
has the initial burden of showing that an agreement to arbitrate
exists. *See Nederlandse Erts-Tangersmaatschappij, N.V. v.
Isbrantsen Co., Inc.*, 339 F.2d 440, 442 (2d Cir. 1964).

There is a presumption of arbitrability when a labor
agreement contains an arbitration clause. *See United Steelworkers
of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582;
80 S. Ct. 1347; 4 L. Ed. 2d 1409 (1960). Arbitration promotes
labor peace by "requiring parties to forgo the economic weapons
of strikes and lockouts." *Schneider Moving & Storage Co. v.
Robbins*, 466 U.S. 364, 371-72; 104 S. Ct. 1844; 80 L. Ed. 2d 366
(1984). However, "the presumption of arbitrability is not a
proper rule of construction in determining whether arbitration
agreements between the union and the employer apply to disputes
between trustees [of benefit funds] and employers, even if those
disputes raise questions of interpretation under the
collective-bargaining agreements." *Id*. at 372; *O'Hare v. Gen'l*

*Marine Transp. Co.*, 740 F.2d 160, 168 (2d Cir. 1984). "In the absence of such a presumption, the Court must look to the agreements at issue to assess whether they evidence any intent by the parties to require arbitration of the disputes between the trustees and the employers." *MI Installers and Furniture Service, Inc. v. N.Y. City District Council of Carpenters Pension Fund*, 476 F.Supp.2d 387, 391 (S.D.N.Y. 2007).

The CBA contains no provision requiring the Funds to arbitrate disputes. Moreover, each of the Trust Agreements in this case empowers the Trustees to "maintain any and all actions and legal proceedings necessary for the collection of the Contributions... and the right to prosecute... by arbitration or otherwise, any such actions." Nothing in this passage requires the Trustees to arbitrate their disputes with the defendants. "The Trustees may exercise their discretion to choose the appropriate means to enforce the defendants' obligations." *Local 8a-28a Welfare & 401 Ret. Funds v. Millard Group*, 2004 U.S. Dist. LEXIS 2288 at *8 (S.D.N.Y. 2004). The Trust Agreements' enforcement mechanisms "protect the collective interest of the parties... by allowing the trustees to seek prompt judicial enforcement of the contribution requirements." *Schneider*, 466 U.S. at 373. Where a trust agreement empowers trustees with the discretion to choose between arbitration and instituting a lawsuit in order to enforce a fund's rights against an employer,

the agreement does not "require" the trustees to arbitrate with the employer. *Stier v. Satnick Dev. Corp.*, 974 F. Supp. 436, 441 (D. N.J. 1997).

Defendants cite *Burgess Steel Products Corp. v. Iron Workers Locals 40, 361 & 471 Union Security Funds*, 1999 U.S. Dist. LEXIS 15524 (D. N.J. 1999), in which the Court interpreted a Trust Agreement similar to the one in this case to require arbitration between funds and an employer. In *Burgess Steel*, however, the issue was not whether an employer could compel a fund to arbitrate, but rather whether a fund could require an employer to arbitrate. The Court found that the Trust Agreement authorized the funds to select arbitration if they chose, and therefore the employer had no cause of action. *Id.* at *25.

Defendants next suggest that a section of the Joint Policy which provides for the collection of arbitration fees evidences an intent on the part of Trustees to agree to arbitrate. This provision, which also provides for the collection of filing fees and fees for service of process, is consistent with the Trustees' power to choose the appropriate means to enforce an employer's contribution obligation. *See* Sabatelli Aff. Ex. C. Nothing about the provision for arbitration fees indicates that the Trustees have agreed to arbitrate in this matter.[4]

---

[4]Defendants also note that the Plan requires arbitration in the event of a deadlock among Trustees. Article IV(a). However, the provision does not mention the employers, and in can no way be read to require arbitration between the Trustees and an employer.

Defendants claim that the conduct of the Funds in a prior dispute with other employers, which the Funds agreed to arbitrate, evidences an intent on the part of the Trustees to arbitrate in this matter. However, in the letter agreeing to voluntarily participate in a single consolidated arbitration, the Trustees explicitly stated that they had an absolute right to pursue district court litigation under ERISA, but that they were electing arbitration in order to save time and expense. Swyers Dec., Ex. A. This settlement agreement resolving the prior dispute moreover states that any disputes arising out of the settlement shall be resolved "by arbitration or Court action." Sabatelli Aff. Ex. E.

In their reply brief, defendants make an argument not previously raised that the Trustees' refusal to arbitrate is arbitrary and capricious. An argument first raised in reply may be ignored. *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc*., 485 F.3d 85, 97 n.12 (2d Cir. 2007); *Carmody v. ProNav Ship Mgmt*., 224 F.R.D. 111, 131 (S.D.N.Y. 2004). In any event, defendants offer no factual or legal basis for their argument that decisions by trustees for pension and welfare funds are, at the insistence of employers, to be subjected to the arbitrary and capricious standard applied to the administrative agency decisions referred to in the New York State cases cited by defendants.

The Trust Agreements are clear; the Trustees have the authority to proceed with this lawsuit. Defendants' motion to dismiss and compel arbitration is denied.

## Conclusion

For the reasons stated herein, the motion to dismiss and compel arbitration is denied. The Clerk is directed to transmit a copy of the within to all parties and to the assigned Magistrate Judge.

SO ORDERED.

Dated:     Brooklyn, NY
           March 9, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge