UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIVISION 1181 AMALGAMATED TRANSIT UNION - NEW YORK EMPLOYEES PENSION FUND and its Trustees: ROBERT H. BAKER, SR., STANLEY BRETTSCHNEIDER, NEIL STRAHL, DOMENIC GATTO, and ANDREW BRETTSCHNIEDER, <br><br> And <br><br> DIVISION 1181 AMALGAMATED TRANSIT UNION - NEW YORK WELFARE FUND and its Trustees: ROBERT H. BAKER, SR., STANLEY BRETTSCHNEIDER, NEIL STRAHL, DOMENIC GATTO, and ANDREW BRETTSCHNIEDER, <br><br>           Plaintiffs, <br><br> v. <br><br> MINIBUS SERVICE, INC., <br><br> And <br><br> GOTHAM TRANSPORTATION, INC., <br><br>           Defendants. | Case No. 08-CV-2910 |

### FIRST AMENDED COMPLAINT

Plaintiffs, by counsel, hereby complain of Defendants, as follows:

### Jurisdiction and Venue

1.   Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1337 (federal questions and commerce) and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(e)(1), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

**Parties and Background**

3. Plaintiffs, the Division 1181 A.T.U. - New York Employees Pension Fund (the "Pension Fund") and the Division 1181 - New York Welfare Fund (the "Welfare Fund"), collectively referred to herein as the "Funds", are multiemployer employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37).

4. Plaintiffs, Robert H. Baker, Sr., Stanley Brettschneider, Neil Strahl, Domenic Gatto, and Andrew Brettschneider are Trustees of the Funds. The Trustees are fiduciaries of the Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21). The Funds are administered at 101-49 Woodhaven Boulevard, Ozone Park, New York 11416. The Trustees bring this action on behalf of the Funds and their participants and beneficiaries pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, and Section 301 of the LMRA, 29 U.S.C. § 185.

5. Defendant, Minibus Service, Inc., ("Minibus") is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is engaged in commerce, in an industry affecting commerce, within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Minibus employs employees represented for the purposes of collective bargaining by the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

6. Defendant, Gotham Transportation, Inc. ("Gotham") is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is engaged in commerce, in an industry affecting commerce, within the meanings of Sections 3(11) and (12)

of ERISA, 29 U.S.C. §§ 1002(11) and (12). Gotham employs employees represented for the purposes of collective bargaining by the Union, a labor organization representing employees in an industry affecting interstate commerce.

7. Both Defendants are related entities that are incorporated under the laws of the state of New York, operate their principle places of business at 2847 West 21st Street, Brooklyn, New York 11224, and are contractors with the New York City Department of Education ("Department of Education").

8. At all relevant times, both Defendants were signatories to and bound by a collective bargaining agreement ("CBA") with the Union that obligated the Defendants to make payments to the Funds in specified amounts ("contributions") on behalf of employees covered by the CBA.

9. With respect to these contributions, Defendants' contracts with the Department of Education each provide that if contributions are found to be owed to the Funds, the Union, on behalf of the Funds, may attach those amounts at the Department of Education and the Department of Education shall withhold the appropriate amounts from any payments due to the contractor and pay them directly to the Union for benefit of the Funds.

10. The Defendants' CBA specifically provides that the Trustees' determination that contributions are owed constitutes the required finding for purposes of Department of Education attachments.

11. The CBA gives the Trustees of the Funds the specific authority to have an auditor audit the payroll records of the Defendant as the Trustees deem necessary to determine the accuracy of the contributions made by the Defendant to the Funds.

12. The CBA also binds Defendants to the terms of the Agreements and Declarations of Trust ("Trust Agreements") establishing the Funds and the policies and procedures adopted by the Trustees of the Funds.

## The 2002-2004 Audit of Minibus

13. Pursuant to their authority under the CBA and Trust Agreements, the Trustees of the Funds adopted a Joint Policy for Collection of Delinquent Contributions (the "Joint Policy").

14. In accordance with the CBA, Trust Agreements, and the Joint Policy, in August 2007, the Funds' auditors conducted an audit of Minibus's payroll records for the period of September 1, 2002 to June 30, 2004 to determine whether the appropriate contributions had been paid by Minibus to the Funds for this time period (the "2002-2004 Audit").

15. With respect to payroll audits, the Joint Policy provides that the first step in the audit report procedure is the draft report from the auditor. The Joint Policy provides that the auditor shall review the payroll audit findings with the Employer and, after providing the employer with a reasonable time to respond to the draft findings, issue a final report.

16. Minibus received the draft report of the 2002-2004 Audit from the auditor on June 20, 2007.

17. Four weeks later, after no response from the employer, the auditor issued the final audit report to the Funds' Board of Trustees.

18. Once the Trustees receive the final report from the auditor, the Joint Policy provides the following:

> Pursuant to the CBA, the Board of Trustees' determination that contributions are owed constitutes a finding for the purposes of the Employer Protection Provisions. The Trustees shall provide written notice of the payroll audit findings and shall not pursue remedies pursuant to the Employer Protection provisions until at the earliest, four (4) weeks after the date of the notice of payroll audit findings, and during this four week period, the Trustees and the Funds'

4

administrative staff will endeavor in good faith to resolve all disputes regarding the audit. Responses from the Employer to the audit findings must be in writing, and should identify and explain all disagreements with the payroll audit procedures, report, and conclusions. The Employer must remit payment of all contributions not specifically disputed, with interest thereon and audit fees, within four weeks of the date of the payroll audit notice. If a written response to a payroll audit is received, the Fund will reply thereto in writing. For Board of Education Contributing Employers, at any time after four weeks from the date of the notice of audit findings, the Union, pursuant to paragraph 5 of the Employee Protection Provisions, may notify the Board of Education in writing prior to the first day of the next month that the Employer owes unpaid Contributions and the amount due to each Fund and the procedures described in Section 2(B), above, shall be followed….

19. On August 30, 2007, the Trustees issued to Minibus the required written notice of the audit findings regarding the 2002-2004 Audit and demanded payment pursuant to those findings A) to the Pension Fund in the amount of $40,393.80 in contributions, $28,825.16 in interest, and $4,207.50 in audit fees, and B) to the Welfare Fund in the amount of $73,016.73 in contributions, $52,585.47 in interest, and $10,412.50 in audit fees.

20. Despite the Joint Policy's requirement that the employer remit payment of all undisputed amounts within four weeks of the date of the payroll audit notice, Minibus failed to make any payments.

21. After hearing nothing from Minibus about the 2002-2004 Audit findings, by letter dated February 13, 2008, the Funds contacted Minibus to follow up on Minibus's review of the 2002-2004 Audit.

22. In April 2008, Minibus finally contacted the Funds regarding the 2002-2004 Audit findings and requested that it be given what is known as the "owner-run credit," which it had received in the past and that it be given additional time to review the 2002-2004 Audit.

5

23. On May 27, 2008, the Funds' Director and one of the Funds' Trustees met with the principle of Minibus to discuss the audit findings. Minibus still made no payment of any undisputed amounts owing as a result of the 2002-2004 Audit finding.

24. By letter dated May 27, 2008, the Funds denied Minibus's request for more time to review the 2002-2004 Audit because almost ten months had elapsed since the Funds sent Minibus the written notice of payroll audit findings. The Funds, however, allowed Minibus the owner-run credit and informed Minibus that with the allowance of the owner-run credit it now owed A) the Pension Fund $33,676.80 in contributions, $29,658.68 in interest, and audit fees of $4,207.50, and B) the Welfare Fund $59,626.23 in contributions, $52,818.62 in interest, and audit fees of $10,412.50. The letter demanded payment of these amounts immediately, and informed Minibus that if payment was not received by May 30, 2008, the Funds would attach those amounts at the Department of Education on June 1, 2008.

25. On May 28, 2008 representatives of the Funds had a conference call with the principal of Minibus to explore the possibility of avoiding attachment at the Department of Education by securing other methods of payment; however, no agreement was reached and Minibus requested arbitration against the Union pursuant to the terms of the collective bargaining agreement. Minibus also requested arbitration against the Funds, but the Funds took the position that there is no agreement between the Funds and Defendants to submit disputes to arbitration.

26. On June 1, 2008 the Funds sought an attachment at the Department of Education for the amounts set forth in paragraph 24. However, Minibus, through counsel objected to the attachment and the Department of Education released the funds to Minibus.

6

27. At the time Plaintiffs filed their original Complaint initiating this action, the amounts determined to be owed by Minibus under the 2002-2004 Audit remained unpaid.

28. Subsequent to the filing of Plaintiffs' original Complaint, Plaintiffs and Defendants have agreed that as a result of the 2002-2004 Audit, Minibus owes the Pension Fund $12,885.80 in contributions and $13,598.65 in interest through January 31, 2009, and owes the Welfare Fund $20,978.98 in contributions and $22,390.02 in interest through January 31, 2009.

29. The agreed upon amounts referenced in paragraph 28 above, remain unpaid to date.

30. In addition, as a result of the 2002-2004 Audit, Minibus owes the Pension Fund interest on the delinquent 2002-2004 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $2,577.16, and audit fees in the amount of $4,207.50, and owes the Welfare Fund interest on the delinquent 2002-2004 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $4,195.80, and audit fees in the amount of $10,412.51.

### The 2004-2007 Audits of Minibus and Gotham

31. In accordance with the CBA, Trust Agreements, and the Joint Policy, in or about April 2008, the Funds' auditors conducted payroll audits of both Minibus and Gotham for the period of July 1, 2004 to December 31, 2007 to determine whether the appropriate contributions had been paid by Defendants to the Funds for that time period (the "2004-2007 Audits").

32. Gotham received the draft report of the 2004-2007 Audit from the auditor on April 21, 2008.

33. Minibus received the draft report of the 2004-2007 Audit from the auditor on April 24, 2008.

34. After both Defendants failed to respond to the draft reports, on or about May 28, 2008, the auditor issued the final audit reports for the 2004-2007 Audits to the Funds' Board of Trustees.

35. On May 29, 2008, the Trustees issued to Minibus the required written notice of the 2004-2007 Audit findings and demanded payment pursuant to those findings to A) the Pension Fund in the amount of $18,627.80 in contributions, $5,110.18 in interest, and $5,525.00 in audit fees and B) to the Welfare Fund in the amount of $78,104.49 in contributions, $32,773.75 in interest, and $5,865.00 in audit fees.

36. On May 29, 2008, the Trustees issued to Gotham the required written notice of the 2004-2007 Audit findings and demanded payment pursuant to those findings A) to the Pension Fund in the amount of $91,520.90 in contributions, $29,239.60 in interest, and $3,060.00 in audit fees and B) to the Welfare Fund in the amount of $153,975.66 in contributions, $60,544.20 in interest, and $3,527.36 in audit fees.

37. During the four week period after the Trustees issued the notice of the 2004-2007 Audit findings to Defendants, Defendants gave no response.

38. On July 1, 2008, the Funds sought an attachment at the Department of Education for the amounts set forth in paragraphs 35 and 36. However, Defendants, through counsel, objected to the attachments and the Department of Education released the funds to Defendants.

39. At the time Plaintiffs filed their original Complaint initiating this action, the amounts determined to be owed by both Defendants under the 2004-2007 Audits remained unpaid.

40. Subsequent to the filing of Plaintiffs' original Complaint, Plaintiffs and Defendants have agreed that as a result of the 2004-2007 Audit, Minibus owes the Pension Fund

$14,708.60 in contributions and $6,289.95 in interest through January 31, 2009, and owes the Welfare Fund $69,337.93 in contributions and $39,668.04 in interest through January 31, 2009.

41. The agreed upon amounts referenced in paragraph 40 above, remain unpaid to date.

42. In addition to the agreed to amounts referenced in paragraph 40 above, with respect to the 2004-2007 Audits, Minibus also owes the Pension Fund interest on the delinquent 2004-2007 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $2,941.72, and audit fees in the amount of $5,525.00, and owes the Welfare Fund interest on the delinquent 2004-2007 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $13,867.58, and audit fees in the amount of $5,865.00.

43. Subsequent to the filing of Plaintiffs' original Complaint, the Funds' auditor made adjustments to the prior findings such that for the 2004-2007 Audit Gotham now owes the Pension Fund $57,911.90 in contributions and $24,446.39 in interest calculated through January 31, 2009, and owes the Welfare Fund $137,739.16 in contributions and $69,014.32 in interest calculated through January 31, 2009.

44. In addition to the amounts referenced in paragraph 43 above, with respect to the 2004-2007 Audits, Gotham also owes the Pension Fund interest on the delinquent 2004-2007 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $11,582.38, and audit fees in the amount of $3,060.00, and owes the Welfare Fund interest on the delinquent 2004-2007 Audit contributions from February 1, 2009 until paid, liquidated damages at 20% of the delinquent contributions in the amount of $27,547.83, and audit fees in the amount of $3,527.36.

45. In February, 2009, subsequent to the filing of the Plaintiffs' original Complaint initiating this action, the Department of Education released $88,500.00 to the Funds representing partial payment of Gotham's obligations under the 2004-2007 Audit. However, to date the balance of the amounts owed by Gotham to both Funds as a result of the 2004-2007 Audit remains unpaid, and is due and owing.

### **Interest Due to the Funds on Late Payments**

46. The Joint Policy contains provisions for Habitually Late Paying Employers ("HLPE") under which an employer is deemed to be a "Habitually Late Paying Employer" if the employer fails to pay required contributions on or before the due date for two or more months during any six consecutive month period.

47. Under the HLPE provisions of the Joint Policy, once an employer is determined to be a Habitually Late Paying Employer the employer is required to pay contributions by certified or cashiers check and is required to pay the Funds a one month security deposit in the amount of the average of its monthly contribution over a six month period.

48. In October, 2007, Defendants were determined by the Funds to be Habitually Late Paying Employers under the HLPE provisions of the Joint Policy because, at that time, both Defendants had failed to pay contributions timely every month since March, 2007. The Funds had, instead, attached amounts at the Department of Education to collect the monthly contributions due. Since being determined by the Funds to be Habitually Late Paying Employers, the Defendants have continued to fail to pay contributions timely and the Funds have been repeatedly forced to collect them by attachment.

49. Because Defendants continued paying late, in February 2008, the Defendants were required to pay a second month security deposit under the terms of the HLPE provisions of the Joint Policy.

50. At that time Defendants requested that the Funds waive the second month security deposit, and in response the Funds allowed the Defendants to pay only 20% of the second month security deposit rather than the full month.

51. Nevertheless, Defendants have continued to fail to pay contributions on time, and the Funds have continued to attach the contribution amounts owed every month.

52. Defendants have asked that the security deposits described in paragraphs 38 and 42 be applied to pay portions of the undisputed amounts owed under the Audits. However, the Funds denied the request because the security deposits are intended to protect the Funds vis-à-vis future payments and are not meant to serve as a resource for Habitually Late Paying Employers to use for payment at their discretion.

53. Pursuant to the CBA, interest at the rate of eighteen percent per annum shall be paid for delinquent contributions from the due date.

54. As a result of late contribution payments to the Funds, for the monthly contributions not paid timely since March 2007, Gotham currently owes the Pension Fund $5,140.03 in interest and owes the Welfare Fund $11,697.32 in interest.

55. As a result of late contribution payments to the Funds, for the monthly contributions not paid timely since March 2007, Minibus currently owes the Pension Fund $9,940.06 in interest and owes the Welfare Fund $22,940.47 in interest.

56. Interest on the late paid contributions is accruing from the dates due and continues to accrue.

### Contributions for May and June 2008

57. In their original Complaint in this case, Plaintiffs made a claim against both Gotham and Minibus for unpaid contributions to both Funds for the months of May and June 2008.

58. At the time Plaintiffs filed the original Complaint in this case, Gotham owed the Pension Fund $33,196.20 in contributions for the month of May 2008 and $30,875.20 in contributions for the month of June 2008, and owed the Welfare Fund $64,526.00 in contributions for the month of May 2008 and $64,526.00 in contributions for the month of June 2008.

59. Also, at the time Plaintiffs filed the original Complaint in this case, Minibus owed the Pension Fund $61,950.00 in contributions for the month of May 2008 and $58,124.00 in contributions for the month of June 2008, and owed the Welfare Fund $120,672.00 in contributions for the month of May 2008 and $121,510.00 in contributions for the month of June 2008.

60. On August 8, 2008, subsequent to the filing of the original Complaint initiating this action, the Funds received payment of the contributions due from both Defendants for the months of May and June 2008. However, pursuant to ERISA Section 502(g)(2), 29 U.S.C. ), 29 U.S.C. § 1132(g)(2), Gotham owes the Pension Fund $755.41 in interest and $6,639.24 in liquidated damages for the month of May 2008 and $231.98 in interest and $6,175.04 in liquidated damages for the month of June 2008. Gotham owes the Welfare Fund $1,400.13 in interest and $12,905.20 in liquidated damages for the month of May 2008 and $445.49 in interest and $12,905.20 in liquidated damages for the month of June 2008.

61. Pursuant to ERISA Section 502(g)(2), 29 U.S.C. ), 29 U.S.C. § 1132(g)(2), Minibus owes the Pension Fund $1,409.17 in interest and $12,390.08 in liquidated damages for the month of May 2008 and $436.50 in interest and $11,624.80 in liquidated damages for the month of June 2008. Minibus owes the Welfare Fund $2,618.42 in interest and $24,134.40 in liquidated damages for the month of May 2008 and $848.92 in interest and $24,302.00 in liquidated damages for the month of June 2008.

### Contributions to the Welfare Fund for the Months of July and August, 2008

62. Minibus failed to make the required contribution payments to the Welfare Fund for the months of July and August, 2008.

63. For the month of July 2008, Minibus owes the Welfare Fund $136,155.00 in contributions, $14,839.03 in interest and $27,231.00 in liquidated damages.

64. For the month of August 2008, Minibus owes the Welfare Fund $136,155.00 in contributions, $12,757.54 in interest and $27,231.00 in liquidated damages.

65. Interest continues to accrue.

### Gotham is the Alter Ego of Minibus and Minibus is the Alter Ego of Gotham

66. Upon information and belief, Gotham and Minibus operate or operated out of the same premises and business address, specifically 2847 West 21st Street, Brooklyn, New York 11224.

67. Upon information and belief, Gotham and Minibus have or had substantially identical management and supervision, specifically Joseph and JoAnne Sabatelli.

68. Upon information and belief, Gotham and Minibus have or had substantially identical business purpose, specifically the provision of school bus services.

13

69. Upon information and belief, Gotham and Minibus have or had substantially identical business operations, specifically the operation of school bus services out of the same business office and premises using the same office and business personel.

70. Upon information and belief, Gotham and Minibus use or used substantially identical equipment and supplies, specifically school busses, office equipment, and supplies.

71. Upon information and belief, Gotham and Minibus have or had substantially identical customers, specifically the Department of Education.

72. Upon information and belief, Gotham and Minibus have or had substantially identical ownership, specifically Joseph and JoAnne Sabatelli - - husband and wife.

73. Upon information and belief, transactions between Gotham and Minibus were not at arms length and the two companies comingled assets. Specifically, assets of Minibus have been used to pay debts and liabilities of Gotham.

74. Gotham and Minibus are alter egos and therefore each Defendant is jointly and severally liable for the liabilities of the other.

## Count I

### For Delinquent Contributions under ERISA § 515

75. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 74, above.

76. By the foregoing conduct, Defendants have violated Section 515 of ERISA, 29 U.S.C. § 1145, and are therefore liable to the Funds under ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), the Trust Agreements, and the Joint Policy, for the contributions owed, interest on those contributions, liquidated damages in the amount of 20% of the contributions due or delinquent, and the Funds' reasonable attorneys' fees and costs in collecting these amounts.

## Count II

## Alter Ego Liability

77. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 though 76, above.

78. As the alter ego of Minibus, Gotham is jointly and severally liable for the amounts owed to the Funds by Minibus.

79. As the alter ego of Gotham, Minibus is jointly and severally liable for the amounts owed to the Funds by Gotham.

## Count III

## For an Injunction under ERISA § 502(a)(3)(A)

80. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 79, above.

81. ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A), permits a plan fiduciary to bring an action "to enjoin any act or practice which violates any provision of this title or the terms of the plan."

82. Defendants' failure to make timely payment of their contribution obligations to the Funds is a violation of ERISA, and as a result Plaintiffs are entitled to an injunction enjoining Defendants from failing to make timely contribution payments and compelling Defendants to pay timely.

**Wherefore**, Plaintiffs pray that the Court:

A. Enter judgment in favor of the Funds and against the Defendants ordering them to pay to the Funds:

    (1)  the sum of all amounts owed as a result of the 2002-2004 and 2004-2007 Audits;

    (2)  interest owed to the Funds as a result of Defendants' late payments of contributions;

    (3)  interest and liquidated damages owed to the Funds for the months of May and June 2008;

    (4)  contributions, interest, and liquidated damages owed to the Welfare Fund by Minibus for the months of July and August 2008;

    (5)  interest on all contributions owed, from the dates they became due and owing as required by Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2);

    (6)  liquidated damages in the amount of twenty percent (20%) of the delinquent contributions as required by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2);

    (7)  the Funds' reasonable attorneys' fees and other costs and disbursements in this action as required by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2); and

    (8)  any additional amounts that may become due to the Funds during the pendency of this action.

  B.  Enter a judgment and order finding that Gotham and Minibus are alter egos and therefore are each jointly and severally liable for the liabilities of the other.

  C.  Enter an Order enjoining Defendants from failing to timely make contribution payments to the Funds in the future.

      D.      Grant such other and further relief as the Court may deem just and proper.


Dated: April 17, 2009                Respectfully submitted,


S/_____
Jeffrey D. Pollack (JP 1409)
Mintz & Gold LLP
470 Park Avenue South
New York, NY 10016
(212) 696-4848

Barry S. Slevin, Esq.
Jeffrey S. Swyers, Esq. (PVH)
Slevin & Hart, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, D.C. 20036
(202) 797-8700

Counsel for Plaintiffs


     A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by Section 502(h) of ERISA, 29 U.S.C. § 1132(h).